No. 14-1423

_____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

## IN RE DAVID M. PROKOP

_____

Appeal from Patent and Trademark Office - Patent Trial and Appeal Board in Reexamination No. 90/012,124

_____

# APPELLANT PROKOP LABS, LLC'S CORRECTED PRINCIPAL BRIEF

_____

Kevin A. Zeck
Ramsey M. Al-Salam
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

*Counsel for Appellant Prokop Labs, LLC*

July 29, 2014

### CERTIFICATE OF INTEREST

Counsel for Appellant Prokop Labs, LLC certifies the following:

The full name of every party or amicus curiae represented by me is: Prokop Labs, LLC.

The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: Prokop Labs, LLC.

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: Not applicable.

The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this Court are listed below:

<u>PERKINS COIE LLP</u>

Ramsey M. Al-Salam
Kevin A. Zeck
Robert Woolston

DATED:  July 29, 2014                    By: */s/ Kevin A. Zeck*
                                                      Kevin A. Zeck

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ ii

TABLE OF AUTHORITIES ..........................................................................iv

I.    STATEMENT OF RELATED CASES .................................................1

II.   JURISDICTIONAL STATEMENT ...........................................................1

III.  STATEMENT OF ISSUES.....................................................................2

IV.   STATEMENT OF CASE .......................................................................2

V.    SUMMARY OF ARGUMENT................................................................8

VI.   ARGUMENT .....................................................................................10

    A.    *Standard of Review*................................................................10

    B.    *The PTAB Failed to Conduct A Proper Obviousness Analysis* .........11

    C.    *The Board Did Not Address The Arguments Below Concerning the Patentability of Claim 29 and Its Dependent Claims*...................15

    D.    *The Claims On Appeal Are Not Obvious* ...........................................16

VII.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT .......................21

ADDENDUM A - PTAB DECISION ON APPEAL ...........................................23

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Barbacid*,
   276 F.3d 1327 (Fed. Cir. 2002) ........................................................................15

*Ex parte Clapp*,
   227 U.S.P.Q. 972 (Bd. Pat. App. & Inter. 1985) ...........................................16

*Gechter v. Davidson*,
   116 F.3d 1454 (Fed. Cir. 1997) ........................................................................11

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) ................................................................................................11

*In re Comiskey*,
   554 F.3d 967 (Fed. Cir. 2009) ..........................................................................11

*In re Kahn*,
   441 F.3d 977 (Fed. Cir. 2006) ........................................................... 12, 16, 17

*In re Kotzab*,
   217 F.3d 1365 (Fed. Cir. 2000) ........................................................................10

*In re Sponnoble*,
   405 F.2d 578 (C.C.P.A. 1969) ..........................................................................19

*In re Thrift*,
   298 F.3d 1357 (Fed. Cir. 2002) ........................................................................11

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007) ................................................................................ 8, 11, 13

*Mintz v. Dietz & Watson, Inc.*,
   679 F.3d 1372 (Fed. Cir. 2012) ............................................................ 17, 18, 19

**Statutes**

35 U.S.C. § 103 ...............................................................................................................11

35 U.S.C. § 141 .................................................................................................................1

**Other Authorities**

Manual of Patent Examining Procedure (M.P.E.P.) § 706.02(j) .............................16

## I.     STATEMENT OF RELATED CASES

There are no appeals in or from the same proceedings before the United States Patent and Trademark Office that were previously before this or any other appellate court.

The following case is the only case known to counsel to be pending in this or any other court that will directly affect or be directly affected by the Court's decision in the pending appeal.  The patent at issue in this appeal, U.S. Patent No. 5,566,913, is currently the subject of litigation in *Prokop Labs, LLC v. Staples et al.*, Case No. 2:07-cv-01094-MJP, pending before the United States District Court for the Western District of Washington, which litigation has been stayed pending the current ex parte reexamination.

## II.     JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 35 U.S.C. § 141. The Patent Trial and Appeals Board entered a Decision on Appeal on January 31, 2014, in Appeal No. 2013-010747, Reexamination Control No. 90/012,124, affirming the examiner's rejection of claims 2, 4-13, and 15-37 of the '913 patent. The PTAB's decision is a final decision appealable under 35 U.S.C. § 141.  Prokop Labs, LLC filed a timely notice of appeal of the PTAB's decision on or about March 31, 2014.  JA274-75.

## III.   STATEMENT OF ISSUES

1.      Whether the Patent Trial and Appeals Board erred in sustaining the examiner's obviousness rejections of claims 2, 4-13, and 15-37 of the '913 patent when the Board did not conduct a proper obviousness analysis for either prior art combination it relied upon to sustain the rejections.

2.      Whether the Board erred in sustaining the examiner's obviousness rejections as to independent claim 29 and dependent claims 27, 28, and 30 - 32 when the Board did not address the arguments below concerning whether these claims are obvious when claim 29 recites a thermally conductive gelatinous resilient material that "is a sole thermal source that, at room temperature, slowly provides heat or cold to the user's wrist for a period of up to approximately 30 minutes."

## IV.   STATEMENT OF CASE

On or about May 31, 1995, David Prokop filed a patent application with the United States Patent and Trademark Office ("PTO").  JA101.  The specification disclosed an improved wrist rest "for reducing repetitive motion strain injuries on the wrist of a typist or computer keyboard operator."  JA101, Abstract.  The specification disclosed that the wrist rest "consists of an elastic envelope (40) filled with a gelatinous material (50) which provides cushioned support for a user's

2

wrists while maintaining the wrist or wrists in a relatively straight position." *Id.*

It further disclosed that "the gelatinous material (50) can be chilled or heated to

provide a source of cold or heat for a period of time" and that the "wrist rest (10)

can be grasped with both hands and squeezed, propelling the gelatinous material

within the elastic envelope, thereby functioning as an exercise means for the hands

and fingers of the hands." *Id.*

　　In the specification, David also noted the prior art was deficient in at least

one important way: "[t]he prior art over-simplifies the pathophysiological cause of

Carpal Tunnel Syndrome as attributable solely to incorrect wrist position." JA106,

col. 2, ll. 28-30.  As a result, the prior art was not effective in treating repetitive

motion strain injuries and "Carpal tunnel syndrome remains a common injury

among typists." *Id.*, col. 2, ll. 26-27.  Indeed, the prior art reference principally

relied upon in this reexamination - Daneshvar (U.S. Pat. No. 5,374,018) - focuses

on wrist alignment:

> "a single person may wish to use a keyboard differently when one part of the
> hand has been under pressure for a while . . . . However, in practice, there is
> not much choice in keyboards and their sizes.  Even their height cannot be
> adjusted easily, which I believe is a part of the problems with the present
> keyboards."

JA035, col. 1, ll. 34 - 43.  Daneshvar continues: "Then we reach the conclusion

that it will be advantageous, and even at times necessary, to have a keyboard that

3

allows its height to be adjusted . . . . This is also true about angulation between the keyboard and the user." *Id.*, col. 1, ll. 47 - 51.

Contrary to the prior art's conventional teachings, David identified that a wrist rest should do more than just align the wrists - it should treat the multiple facets of repetitive motion strain injuries. "What is needed is a wrist rest that helps reduce pressure on the wrist and reduce or eliminate inflammation and which also provides a means of exercising the muscles of the hands and wrists." JA106, col. 2, ll. 42 - 45. He also noted that "[a] warm wrist rest provides a soothing remedy for the pain of the hands and wrists associated with arthritic type diseases." JA108, col. 6, ll. 34 - 36. As a result, David invented a wrist rest that treated the multiple facets of the repetitive motion strain injuries.

On October 22, 1996, the PTO issued U.S. Patent No. 5,566,913 to David. JA101. He assigned the '913 patent to Prokop Labs, LLC on or about September 20, 2005. JA190.

In January of 2008, Prokop Labs, LLC filed a request for reexamination of the '913 patent. JA234. In March of 2008, a third party request for reexamination was filed by Mr. Brian M. Berliner of O'Melveny & Myers, LLP. *Id.* The PTO merged the two proceedings in June of 2008 (hereinafter, "first reexamination"). *Id.*

The examiner in the first reexamination rejected all claims of the '913 patent based on a combination of Daneshvar and Gibbs (WO 95/10251 A1). JA237. Prokop Labs then appealed the final rejection to the Board of Patent Appeals and Interferences (now, the Patent Trial and Appeal Board). JA234. The BPAI reversed the examiner's rejections as to claims 4, 22, 34, 41, and 54. JA233, JA257-58 These claims contained limitations directed to a thermally conductive gelatinous means that may be heated using microwave radiation. *Id.* The BPAI reasoned that the examiner's rejections were improper because the examiner failed to establish whether the materials disclosed in Daneshvar or Gibbs were even suitable for heating by microwave radiation. JA257.

After remand by the BPAI, the examiner determined that claim four was patentable, that claims 2, 5-10 and 15-19 were patentable as amended, and that claims 11-13, dependent upon an amended claim, were patentable. JA111. The examiner also allowed new claims 20-37. *Id.* On January 31, 2012, the PTO issued an Ex Parte Reexamination Certificate for the '913 patent. JA110.

Two days later, on February 2, Mr. Berliner filed a second, serial third-party request for ex parte reexamination of the '913 patent. JA113. The PTO granted this request, and the examiner ultimately proceeded to reexamine the patent on the basis of three combinations of prior art. The first combination was Daneshvar and

Gibbs - the same combination at issue in the first reexamination. JA004. The second was Daneshvar, Gibbs, and Gibbon (U.S. Pat. 4,914,737). *Id.* And the third was Daneshvar and Francis Jr. (U.S. Pat. No. 4,756,311), a patent referenced by David in the specification of the '913 patent. *Id.*

In a January 2013 final office action, the examiner rejected all pending claims (claims 2, 4-13, 15-37) based on Daneshvar, Gibbs, and Gibbon, and all pending claims except claim 17 based on the other two combinations. *Id.* Prokop Labs appealed the rejections to the Patent Trial and Appeal Board. JA002. By the time the rejections had been appealed to the PTAB, all pending independent claims had limitations related to a thermally conductive gelatinous means, member or material that may be heated, is heated, or is configured to be heated by microwave radiation. JA224, JA226-JA229 (claims 4, 21, 29, 35),.

On January 31, 2014, the PTAB issued its Decision on Appeal. JA016. The PTAB affirmed the examiner's rejection of all pending claims based on the combination of Daneshvar, Gibbs, and Gibbon. JA006. The PTAB also affirmed the rejection of all claims except claim 17 based on the combination of Daneshvar and Francis Jr. JA012. The PTAB further provided that, because it affirmed the

rejections over the combinations above, "we do not reach the Examiner's rejection of the claims over the combination of Daneshvar and Gibbs." *Id.*

As to the rejection of claims 2, 4-13, and 15-37 over Daneshvar, Gibbs, and Gibbon, the PTAB sustained the rejection with little analysis. Instead, it merely noted that "'[i]t would have been obvious to add the electromagnetic absorptive materials disclosed in Gibbon to the silicone gels of Daneshvar or Gibbs, to form a microwave heatable therapeutic body pad.'" JA006. The PTAB also noted: "[i]n other words, the Examiner uses the teaching of an additive that facilitates microwave heating of a silicone-based materials in combination with the gel wrist rest taught by combining the teachings of Gibbs and Daneshvar." *Id.*

The PTAB also sustained the rejection of claims 2, 4-13, 15-16, and 18-37 over Daneshvar and Francis Jr. with little analysis. It noted that "[t]he Examiner found that Francis 'discloses a microwavable thermal compress' and that 'the thermal gel pack is "capable of various uses, such as to warm the hands or to warm or cool an injured or painful part of the body."'" JA011. The PTAB also noted that "[t]he Examiner ultimately concluded that '[i]t would have been obvious to use the gel of Francis, Jr. in the wrist rest of Daneshvar, to form a microwave heatable therapeutic body pad.'" *Id.* Further, the PTAB dismissed Prokop Labs' arguments without serious consideration: "Appellant argues the combination

7

based upon the same arguments we previously rejected regarding the combination of Daneshvar and Gibbs both *supra* and in the prior appeal. . . . Having already rejected these arguments as unpersuasive we sustain the Examiner's rejections over the combination of Daneshvar and Francis." JA012.

Prokop Labs filed a timely notice of appeal with the United States Patent and Trademark Office on or about March 31, 2014. JA274-75.

## V.    SUMMARY OF ARGUMENT

Prokop Labs, LLC respectfully requests that this Court reverse the decision of the PTAB and remand to the PTAB for further proceedings. The PTAB affirmed the examiner's obviousness rejections of all claims pending in the reexamination, but the PTAB failed to conduct a proper obviousness analysis. As to the combination of Daneshvar, Gibbs, and Gibbon, the PTAB assumed that Daneshvar and Gibbs could be combined with Gibbon based in part on its decision in the first reexamination, but the PTAB did not undertake the analysis required by *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007). Additionally, the PTAB also failed to recognize that, in its decision in the first reexamination, it determined that Daneshvar and Gibbs could not be combined to invalidate claims with limitations directed to a microwavable gelatinous means - and all claims before the PTAB in this, the second reexamination, have such limitations.

8

The PTAB also determined that Daneshvar and Francis Jr. were properly combinable without undertaking a *KSR* analysis. The PTAB instead relied upon the assumed combinability of Daneshvar, Gibbs, and Gibbon to determine that Daneshvar and Francis Jr. were combinable. The PTAB's failure to conduct a proper obviousness analysis is reversible error.

Additionally, the PTAB failed to address arguments raised below concerning whether claim 29 and its dependent claims are obvious when claim 29 recites "a thermally conductive gelatinous resilient material that is sole thermal source that, at room temperature, slowly provides heat or cold to the user's wrist for a period of up to approximately 30 minutes." There is no discussion in the PTAB's decision concerning these arguments, and this is plainly prejudicial to Appellant. This failure is reversible error.

Should the Court determine that it need not vacate and remand the PTAB's decision even though the PTAB failed to conduct the proper obviousness analysis, the Court should nonetheless reverse the decision because, on the record before the Court, the pending claims are not obvious in light of the prior art combinations. In 1995, David Prokop filed a patent application directed to a wrist rest for treating repetitive motion strain injuries while a person is using, for example, a computer keyboard. The record shows that, before this time, those developing wrist rests

focused on wrist alignment.  David, however, realized that prior art wrist rests oversimplified the problem.  So David looked at the problem anew, and determined that a device that treated the multiple facets of repetitive motion strain injuries - alignment, inflammation, pain, and exercise - would be an improvement. He therefore invented and patented a wrist rest that treated the multiple facets of repetitive motion strain injuries.

## VI.   ARGUMENT

Prokop Labs, LLC respectfully requests that this Court reverse the decision of the PTAB and remand for further proceedings.  The PTAB determined that all claims are obvious, but the PTAB failed to conduct a proper obviousness analysis as to either combination of prior art it relied upon.   Under governing precedent, the Court should reverse and remand for further proceedings.

### A.   *Standard of Review*

The PTAB's ultimate determination of obviousness is reviewed *de novo*. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).  Underlying factual findings are ordinarily reviewed for substantial evidence.  *Id.*

This Court may not affirm the PTAB on grounds other than those the PTAB relied upon in rendering its decision if upholding the decision depends upon making a fact-determination not previously made by the PTAB.  *In re Comiskey*,

554 F.3d 967, 974 (Fed. Cir. 2009).  In such circumstances, this Court vacates the

decision and remands for further proceedings.  *In re Thrift*, 298 F.3d 1357, 1365-

66 (Fed. Cir. 2002).

Similarly, when a decision by the PTAB lacks adequate findings or

reasoning, meaningful review is not possible.  *Gechter v. Davidson*, 116 F.3d 1454,

1457-58 (Fed. Cir. 1997).  In these circumstances, this Court vacates the decision

and remands for further proceedings.  *Id.* at 1460.

### B.     *The PTAB Failed to Conduct A Proper Obviousness Analysis*

To conduct a proper obviousness analysis under 35 U.S.C. § 103, the PTAB

must determine: (1) the scope and content of the prior art; (2) the differences

between the claimed invention and the prior art; (3) the level of ordinary skill in

the pertinent art; and (4) where in evidence, so-called secondary considerations.

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (citing *Graham v. John*

*Deere Co.*, 383 U.S. 1, 17-18 (1966)).  These determinations are findings of fact,

underlying the ultimate question of obviousness.  *John Deere*, 383 U.S. at 17-18.

Further, to combine prior art references for obviousness purposes, there must be

more than just a demonstration that "each of [the patented] elements was,

independently, known in the" references—there must be an articulated reason to

combine the references.  *KSR*, 550 U.S. at 418-19; *In re Kahn*, 441 F.3d 977, 988

(Fed. Cir. 2006) ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.")

In this case, the PTAB did not conduct a proper obviousness analysis. The PTAB sustained the examiner's rejection of claims 2, 4-13, and 15-37 of the '913 patent as obvious in light of Daneshvar, Gibbs, and Gibbon. The PTAB also sustained the examiner's rejection of claims 2, 4-13, 15-16, and 18-37 as obvious in light of Daneshvar and Francis Jr.. The PTAB, however, did not undertake a *KSR* analysis for either combination. Instead it assumed that the combinations were proper.

The PTAB assumed the first combination was proper due to its prior decision in Appeal No. 2011-007885, stating that "the Board has already determined that the combination of Daneshvar and Gibbs is proper." As such, the PTAB stated: "'[i]t would have been obvious to add the electromagnetic absorptive materials disclosed in Gibbon to the silicone gels of Daneshvar or Gibbs, to form a microwave heatable therapeutic body pad.'" JA006 (quoting examiner). The PTAB's prior decision, however, found that Daneshvar and Gibbs could not be combined to invalidate claims with limitations directed to a microwavable gelatinous means. JA258 (examiner failed to show inherency of microwavability

regarding Daneshvar and Gibbs).  And all claims before the PTAB in the second reexamination have limitations directed to a microwavable gelatinous means, member or material.  JA224, JA226-JA229 (claims 4, 21, 29, 35).   The foundation for the PTAB's obviousness analysis is therefore flawed.

The PTAB should have conducted a proper *KSR* obviousness analysis.  It did not.  There is no discussion  of scope and content of the prior art, the differences between the claimed invention and the prior art, and/or the level of ordinary skill in the pertinent art.  *KSR*, 550 U.S. at 406.  The PTAB provided no meaningful reasoning for its combination of Daneshvar, Gibbs, and Gibbon.

The PTAB also did not undertake a *KSR* analysis when it held that claims 2, 4-13, 15-16, and 18-37 of '913 patent were obvious in light of a second combination: Daneshvar and Francis Jr.  JA011-12.  Francis Jr. is a patent directed to a microwavable thermal compress, and David referenced it in his original patent application.  JA108, col. 5, ll. 29-30.  Instead of undertaking the proper analysis, the PTAB rubberstamped the examiner's conclusion that "[i]t would have been obvious to use the gel of Francis, Jr. in the wrist rest of Daneshvar, to form a microwave heatable therapeutic body pad."  JA011 (internal quotations omitted).

In doing so, the PTAB appeared to have relied upon its prior decision concerning Daneshvar and Gibbs, but failed to acknowledge that it previously

found Daneshvar and Gibbs not properly combinable.  JA012 ("Appellant argues the combination based upon the same arguments we previously rejected regarding the combination of Daneshvar and Gibbs both *supra* and in the prior appeal. . . . Having already rejected these arguments as unpersuasive we sustain the Examiner's rejections over the combination of Daneshvar and Francis.").  The PTAB also never explained why the current claims are now unpatentable based on a combination such as Daneshvar (disclosing a wrist rest with, e.g., a "gel similar to silicon gel") and Francis Jr., when, during the original examination in 1995, the Patent Office granted claim 4 of '913 patent—which has a limitation directed to a thermally conductive gelatinous resilient means that may be heated using microwave radiation—even though: (1) wrist rest supports such as U.S. Patent No. 5,435,508 were cited (disclosing a wrist rest with a viscous fluid - *see*, *e.g.*, Abstract) and (2) David referenced Francis Jr. in the '913 patent's specification. The only thing that appears to explain the difference in outcomes is hindsight.

The PTAB failed to undertake the obviousness analysis required by *KSR*.  Its decision instead rests upon conclusory statements.  This is prohibited.  The PTAB's decision should be reversed and remanded for further proceedings.

**C.**     ***The Board Did Not Address The Arguments Below Concerning the Patentability of Claim 29 and Its Dependent Claims***

Beyond failing to conduct a proper obviousness analysis, the PTAB also failed to address the arguments below about whether claim 29 and its dependent claims are obvious when claim 29 requires a thermally conductive gelatinous resilient material "that is a sole thermal source that, at room temperature, slowly provides heat or cold to the user's wrist for a period of up to approximately 30 minutes." JA215-16 (Prokop Labs' Appeal Brief to the PTAB); JA270-71 (Examiner's Response Brief). There is no discussion in the PTAB's final decision of this limitation, even though it was raised below. This alone merits remand to the PTAB. *Brown v. Barbacid*, 276 F.3d 1327, 1337-38 (Fed. Cir. 2002) (reversing and remanding because Board failed to consider argument and evidence concerning conception).

Additionally, the record shows that the Examiner did not establish a prima facie case as to the obviousness of claim 29 or its dependent claims. The Examiner merely relied on a statement from the BPAI's decision in the first reexamination that "Silicone [sic] gel, which is disclosed in the prior art [Daneshvar], would reasonably appear to be capable of slowly radiating cold or heat for up to 30 minutes depending on, inter alia, the temperature to which the gel is cooled or heated." JA270 (internal quotations omitted). The Examiner offered nothing more

15

than this conclusory statement in its Answer to Prokop Labs' PTAB Appeal Brief. This type of reasoning is prohibited. *In re Kahn*, 441 Fed. at 988 ("rejections on obviousness grounds cannot be sustained by mere conclusory statements"); Manual of Patent Examining Procedure (M.P.E.P.) § 706.02(j) ("'To support the conclusion that the claimed invention is directed to obvious subject matter, either the references must expressly or impliedly suggest the claimed invention or the examiner must present a convincing line of reasoning as to why the artisan would have found the claimed invention [] obvious in light of the teachings of the references.' *Ex parte Clapp*, 227 U.S.P.Q. 972, 973 (Bd. Pat. App. & Inter. 1985).").

### D.    *The Claims On Appeal Are Not Obvious*

Should the Court decide that it need not vacate and remand the PTAB's decision, the Court should nonetheless reverse the decision because, on the record before the Court, the pending claims are not obvious in light of the prior art combinations relied upon by the PTAB.

As a starting point, the record shows that the PTAB provided little reasoning for why the pending claims are obvious. For both the combination of Daneshvar, Gibbs, and Gibbon and the combination of Daneshvar and Francis Jr., the PTAB

reduced its obviousness analysis to a mere recitation that:

- "[i]t would have been obvious to add the electromagnetic absorptive materials disclosed in Gibbon to the silicone gels of Daneshvar or Gibbs, to form a microwave heatable therapeutic body pad," JA006; and

- "[i]t would have been obvious to use the gel of Francis, Jr. in the wrist rest of Daneshvar, to form a microwave heatable therapeutic body pad," JA011.

The PTAB appears to have determined that the prior art references disclose the elements of the claimed invention, and that the combination of these elements lead to no more than predictable results. But the PTAB articulated no reason for why one of skill in the art would have, at the time of the invention, combined the prior art elements. This type of reasoning is prohibited. The mere invocation that a combination would be "obvious to try" adds nothing to the obviousness questions. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1377-78 (Fed. Cir. 2012); *In re Kahn*, 441 F.3d at 988 ("rejections on obviousness grounds cannot be sustained by mere conclusory statements").

Moreover, in this reexamination, the PTAB and the examiner appear to have misunderstood the problem addressed by David. The PTAB and the examiner concluded that it would have been obvious to combine the prior art to "form a

microwave heatable therapeutic body pad." But a "body pad" is irrelevant—the problem David addressed involves wrist rests that are used, for example, while working at a computer. Thus, the PTAB's formulation of the problem appears to represent "a form of prohibited reliance on hindsight." *Mintz*, 679 F.3d at 1377 (discussing impermissible use of knowledge from knitting artisan in solving problem addressed to meat encasement). That is, the PTAB adopted a formulation of the problem ("body pad") that would allow it to render the claims invalid in light of the proposed combinations of prior art references.

The record, however, shows that, before David's invention, those developing wrist rests focused on wrist alignment. For example, Daneshvar focuses on wrist position:

> "a single person may wish to use a keyboard differently when one part of the hand has been under pressure for a while . . . . However, in practice, there is not much choice in keyboards and their sizes. Even their height cannot be adjust easily, which I believe is a part of the problems with the present keyboards."

JA035, col. 1, ll. 34 - 43. Daneshvar continues: "Then we reach the conclusion that it will be advantageous, and even at times necessary, to have a keyboard that allows its height to be adjusted . . . This is also true about angulation between the keyboard and the user." *Id.*, col. 1, ll. 47 - 51.

David, however, addressed the problem of treating repetitive motion strain injuries while working at a computer in a different manner.  He recognized that the prior art "over-simplifies the pathophysiological cause" of repetitive motion strain injuries, and he sought to address this problem by creating a wrist rest that combined multiple strategies for alleviating or preventing these injuries - wrist alignment, reduction of inflammation, pain relief, and muscular exercise.

An inventive contribution "often lies in defining the problem in a new revelatory way."  *Mintz*, 679 F.3d at 1377; *In re Sponnoble*, 405 F.2d 578, 585 (C.C.P.A. 1969) ("[A] patentable invention may lie in the discovery of the source of a problem . . . .").  David did so, looking anew at the problem of treating repetitive motion strain injuries while working, e.g., at a computer.  As a result, he bucked the conventional teachings of wrist-rest prior art, which focused on the wrist alignment.  The Patent Office granted him a patent for his contribution.  Nearly twenty years later, the PTAB now describes his invention as a "body pad", and then claims that the creation of a heated body pad would have been obvious in light of the prior art.  The PTAB, however, misunderstood the problem David addressed.  It therefore did not consider whether one skilled in the art of wrist rests would have recognized the problem addressed by David - i.e., whether a device that treated the multiple facets of repetitive motion strain injuries while working at

a computer (where application of heat and cold could be a problem) could be an improvement.  The record shows that those skilled in the art did not recognize this problem, and therefore that David's approach to wrist rests was not obvious.

As a result, the PTAB likely used hindsight to improperly invalidate claims 2, 4-13, and 15-37.  This is shown by PTAB's approval of the combination of Daneshvar and Francis Jr.  As to Daneshvar, it makes no mention of treating the multiple facets of repetitive motion strain injuries while working at a work station - it focuses on wrist rest alignment.  There is no teaching or reasoning in Daneshvar that would lead one of skill in the art to combine it with other prior art to form a wrist rest that treated the multiple facets of repetitive motion strain injuries while working at a work station.  There is no mention of heat or cold therapy,[1] and no mention of the use of Daneshvar's wrist rest as an exercise or messaging device.

As to Francis Jr. (disclosing a microwaveable thermal compress), David referenced this patent in the '913 patent's specification.  The Patent Office had to have been aware of it when reviewing David's original patent application.  The Patent Office was also aware of other generic wrist rest patents, such as U.S. Patent

---

[1] Indeed, as to cold therapy, Daneshvar teaches away from any modification that would chill the disclosed "gel similar to silicon gel" to below freezing temperatures (e.g., zero degrees Centigrade), which is a limitation of pending claims 2, 15, 27, and 33 of the '913 patent.  Daneshvar emphasizes the need for a soft surface for the support pad, and the reference expressly teaches away from a solid structure on which the user's hands/wrists will rest.  JA035, col. 1, l. 60 - col 2, l. 2.

No. 5,435,508, cited on the face of the '913 patent.  Nonetheless, the Patent Office granted David's patent.  The PTAB, however, now asserts that a generic wrist rest patent such as Daneshvar can be combined with Francis Jr. to render the '913 patent invalid.  But the PTAB offers no meaningful reason for this about-face.  The only thing that appears to explain the difference in outcomes is hindsight.  The Court should reverse the PTAB's decision to invalidate claims 2, 4-13, and 15-37.

## VII.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The Court should vacate and remand the PTAB's decision as to all claims because the PTAB failed to conduct a proper obviousness analysis in sustaining the examiner's rejections.  The Court should vacate and remand the PTAB's decision as to claims 27, 28, 29, 30, 31, and 32 because the PTAB failed to address arguments raised below concerning whether these claims are obvious.

Should the Court determine that it need not vacate and remand the PTAB's decision, even though the PTAB failed to conduct a proper obviousness analysis and/or consider arguments raised below, the Court should nonetheless reverse the decision of PTAB because, on the record before the Court, claims 2, 4-13, and 15-37 are not obvious.

DATED: July 29, 2014                **PERKINS COIE LLP**

By: */s/ Kevin A. Zeck*
    Kevin A. Zeck
    *KZeck@perkinscoie.com*
    Ramsey M. Al-Salam
    *RAlsalam@perkinscoie.com*

    *Attorneys for Appellant*
    *Prokop Labs, LLC*

# ADDENDUM A:

**DECISION ON APPEAL,**
**PATENT AND TRIAL APPEAL BOARD,**
**APPEAL 2013-010747,**
**REEXAMINATION CONTROL NO. 90/012,124**

**ISSUED ON JANUARY 31, 2014**

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

*Ex parte* DAVID M. PROKOP
_____

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1[1]
Technology Center 3900

_____

Before:  JEFFREY B. ROBERTSON, WILLIAM V. SAINDON, and
BRETT C. MARTIN, *Administrative Patent Judges*.


MARTIN, *Administrative Patent Judge*.


DECISION ON APPEAL

_____

[1] 5,566,913 originally issued October 22, 1996 to Prokop (hereinafter the
'913 patent).  A Reexamination Certificate issued on January 31, 2012.

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

Appellant appeals under 35 U.S.C. §§ 134(b) and 306 from a Final Rejection of claims 2, 4-13, and 15-37. We have jurisdiction under 35 U.S.C. §§ 134(b) and 306. Oral arguments were heard on December 11, 2013.

## STATEMENT OF THE CASE

This case was previously before the Board in connection with Reexamination Control Nos. 90/010,056 and 90/010,078. A decision on appeal was rendered on September 14, 2011, which affirmed the Examiner's decision to reject claims 1-3, 5-16, 18-21, 23-33, 35-40, 42-53, 55, and 56, and reversed the Examiner's decision to reject claims 4, 22, 34, 41, and 54. (*See* Decision on Appeal, Appeal No. 2011-007885, p. 28.) As noted above, a Reexamination Certificate issued cancelling claims 1, 3, and 14, determining claims 2, 5-10, and 15-19 to be patentable as amended, determining that claims 4 and 11-13, dependent on amended claims, as patentable, and determining new claims 20-37 as patentable.

Appellant also informs us that the '913 Patent is the subject of litigation styled *Prokop Labs, LLC v. Staples, Inc.,* Case No. 2:2007cv01094-P (W. D. Wash).

We AFFIRM.

## THE INVENTION

Appellant's invention is directed generally to a "wrist rest that supports the wrist, exercises the hands, and reduces inflammation to decrease the severity of symptoms associated with repetitive motion strain

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

injuries like Carpal Tunnel Syndrome." Spec., col. 1, ll. 9-12. Claims 29

and 35, reproduced below, are illustrative of the claimed subject matter:

> 29.    A wrist rest and exercise apparatus: for a user's wrists, hands, and fingers and for use with at least one of a keyboard and computer mouse, comprising:
>
> a flexible thermally conductive gelatinous resilient member configured for providing a cushion for a user's wrist that supports the user's wrist in an aligned arrangement relative to the one of the keyboard and the computer mouse and for radiating at least one of cold and heat when in a room temperature environment to the user's wrist over a period of time when the user's wrist is supported by the gelatinous resilient member, the gelatinous, resilient member having a generally deformable surface for providing an adjustable contact area shaped to the user's wrist; a flexible envelope for containing and protecting the gelatinous resilient member: and a cover disposed about the gelatinous resilient member on which the user's wrist may be disposed, said thermally conductive gelatinous resilient member containing thermally conductive gelatinous resilient material that is a sole thermal source that, at room temperature, slowly provides heat or cold to the user's wrist for a period of up to approximately 30 minutes, and wherein the thermally conductive gelatinous resilient member is configured to be heated using microwave radiation.
>
> 35.    A method for relieving repetitive motion stress on the wrists of a user while using a device on a work station wherein using said device requires repetitive motion of the fingers and hands, said device including a keyboard and a mouse of a computer, said method including the steps:
>
> positioning on a surface of said work station, and positioned parallel to a leading edge of said keyboard, a relief means with a length substantially equal to said leading edge, a height and a width, said relief means including a deformable thermally conductive gelatinous material having a generally

3

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

cylindrical shape, a means for containing said gelatinous material, and a fabric covering wrapped around said means for containing said gelatinous material and wherein said height has a value selected to position said wrists on said relief means while using said device wherein said thermally conductive gelatinous material may be heated using microwave radiation.

## REFERENCES

The prior art relied upon by the Examiner in rejecting the claims on appeal is:

| | | |
|---|---|---|
| Francis | US 4,756,311 | July 12, 1988 |
| Gibbon | US 4,914,717 | Apr. 3, 1990 |
| Daneshvar | US 5,374,018 | Dec. 20, 1994 |
| Lilienthal | US 5,510,153 | Apr. 23, 1996 |
| Gibbs | WO/1995/10251 | Apr. 20, 1995 |

## THE REJECTIONS ON APPEAL

The Examiner made the following rejections:

1.     Claims 2, 4-13, 15, 16, and 18-37 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Daneshvar and Gibbs. Ans. 4.

2.     Claims 2, 4-13, and 15-37 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Daneshvar, Gibbs, and Gibbon. *Id*; *see also* Final Rejection 2.

3.     Claims 2, 4-13, 15, 16, and 18-37 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Daneshvar and Francis. *Id*.

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

## ANALYSIS

As an initial matter, we note that the Appellant presents arguments on the propriety of the Examiner's combination of Daneshvar and Gibbs. *See, e.g.*, App. Br. 15-21. In a prior decision dated September 14, 2011, this Board sustained the Examiner's combination of Daneshvar and Gibbs. *See* Decision in Appeal No. 2011-007885, 17-21. We acknowledge that the claims have been amended,[2] but the amendments made do not materially affect our determination as to whether the combination is proper. Because the Board has already determined that the combination of Daneshvar and Gibbs is proper in this regard, we decline to revisit Appellant's arguments as to the propriety of this combination. [3]

*Rejection of Claims 2, 4-13, and 15-37 as Unpatentable
over Daneshvar, Gibbs, and Gibbon*

In addition to arguing the combination of Daneshvar and Gibbs, which we have already addressed above, Appellant further argues that the addition of Gibbon is improper because it "teaches the use of a solid, elastomeric rubber material" that "would destroy the intended function of Daneshvar of providing a soft pad." App. Br. 31. We are not persuaded by

---

[2] For instance, claim 21 now states "said thermally conductive gelatinous resilient means *is* heated from about 32 to about 50 degrees Centigrade," whereas previously the claim stated "said thermally conductive gelatinous resilient means *may be* heated…" (emphasis added).

[3] Appellant's representative stated during oral argument that "I would ask you to revisit the combination of the references of Gibbs and Daneshvar." Tr. 6.

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

Appellant's argument that the rubber material of Gibbon cannot be bodily incorporated into Daneshvar. "[I]t is not necessary that the inventions of the references be physically combinable to render obvious the invention under review." *In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983). The relevant inquiry is whether the claimed subject matter would have been obvious to those of ordinary skill in the art in light of the *combined teachings* of those references. *See In re Keller*, 642 F.2d 413, 425 (CCPA 1981). "Combining the *teachings* of references does not involve an ability to combine their specific structures." *In re Nievelt*, 482 F.2d 965, 968 (CCPA 1973).

Contrary to Appellant's argument, the Examiner does not suggest using the solid rubber material disclosed in Gibbon, but merely points out that based upon Gibbon "[i]t would have been obvious to add the electromagnetic absorptive materials disclosed in Gibbon to the silicone gels of Daneshvar or Gibbs, to form a microwave heatable therapeutic body pad." Final Rejection 15. In other words, the Examiner uses the teaching of an additive that facilitates microwave heating of a silicone-based material in combination with the gel wrist rest taught by combining the teachings of Gibbs and Daneshvar. The Examiner's combination, therefore, does not require bodily incorporation of the solid rubber material as asserted by Appellant. Accordingly, we do not find Appellant's arguments persuasive and sustain the Examiner's rejection of claims 2, 4-13, and 15-37 as unpatentable over the combination of Daneshvar, Gibbs, and Gibbon.

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

### *Rejection of Claims 2, 8, 15, 18, 27, 33 and 36*

In arguing the rejection of these claims over Daneshvar and Gibbs, and Gibbon, Appellant refers to the arguments made for these claims for the rejection of Daneshvar and Gibbs.  However, as we do not reach this rejection as explained further *infra*, we address Appellant's arguments here.

### *Claims 2, 15, 27, and 33*

Appellant argues these claims as a group and they, therefore, stand or fall together.  We choose claim 2 as representative of the group. 37 C.F.R. § 41.37(c)(1)(vii).  Claim 2 requires that "said thermally conductive gelatinous resilient means is chilled to less than zero degrees Centigrade."  The Examiner found that Gibbs discloses "cooling silicon gel to a low temperature of 7.2°C" and that "the silicon gel of Gibbs et al. is inherently capable of being cooled to below 0°C based on the Laws of Thermodynamics."  Final Rejection 16.  The Examiner also found that "the placement of silicon gel within an environment having a temperature of below 0°C for a sufficient amount of time would result in the silicon gel being cooled to a temperature equal to that environment."[4]  Final Rejection 16.

Appellant argues that "the reference is silent about such cooling or freezing of the pad."  App. Br. 25.  The Examiner, however, does not assert an explicit teaching of silicone gel or the like being cooled to below zero in

---

[4] In response to a question asking what "the difference between that apparatus sitting outside in the winter at zero or sitting somewhere in the summer" would be, Appellant's representative responded, "Structurally, there would be no difference."  Tr. 14.

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

the prior art. Instead, the Examiner's findings show that the gel of Gibbs is

cooled down to 7.2°C and, by the laws of thermodynamics, is capable of

being cooled a few degrees more to the claimed temperature.[5] We determine

this to be sufficient to support a conclusion of obviousness and do not

consider Appellant's arguments to the contrary persuasive.

Although the claim language regarding temperature of the gel in most,

but not all instances, has been changed from "may be" to "is," such a change

in language of an apparatus claim still only describes the environment in

which the gel is found. That is, the gel is the gel at either temperature; the

difference is merely how cold it is. As we stated previously, and the

Examiner notes, "'claim 2 is directed to an apparatus, [and] the limitation

merely recites a characteristic of the 'thermally conductive gelatinous

resilient means' – namely, its ability to be chilled to less than zero degrees

Celsius.'" Ans. 7. When dealing with an inherent characteristic or state of

an article, the Examiner need only show that the device is capable of

achieving the characteristic at issue, which the Examiner has done in this

case and against which Appellant has provided no evidence to the contrary.

Accordingly, we again decline to deviate from our prior determination

regarding the ability of silicone gel to be placed in an environment of zero

degrees Celsius, and sustain the Examiner's proposed combination of

Daneshvar and Gibbs to reject claims 2, 15, 27, and 33.

---

[5] In the decision of September 14, 2011, this Board affirmed the Examiner's
rejection based upon the finding that the gel at issue in the prior art is
capable of being cooled to below zero degrees and that the Patent Owner did
not direct the Board to any evidence to the contrary. *See, e.g.*, Ans. 7-8.

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

Appellant further makes two arguments that the prior art teaches away from such cooling. Appellant asserts that because Gibbs warns that using ice packs at or below 32°F can result in frostbite, Gibbs teaches away from additional cooling. Gibbs p. 1, ll. 33-35. This argument disregards the fact that computer wrist rests disclosed in the prior art include layers of material in-between the gel and the wrists, which are not present in ice packs. As such, this disclosure does not weigh in on the circumstances found in the proposed combination.

Appellant also argues that Daneshvar teaches away from cooling to the levels recited in the claims, because Daneshvar discloses the need for a soft surface. App. Br. 26. The portion of Daneshvar cited by Appellant (col. 1, l. 60 - col. 2. l.2) refers to the solid structure of the desk itself and not to a wrist rest chilled to below zero degrees, which is what is required in claim 2. In fact, Daneshvar teaches that any padding, even "a piece of plastic with bubbles that was used in packing…was helpful to some degree." *Id.* Accordingly, we do not find these teaching away arguments persuasive and we sustain the Examiner's rejection of claims 2, 15, 27, and 33 as unpatentable over the combination of Daneshvar, Gibbs, and Gibbon.

*Claim 8*

Appellant argues that the combination of Gibbs and Daneshvar fails to teach the "massaging means" of claim 8 because the "Examiner has simply recharacterized the soft bubble layer in light of Appellant's claim feature regarding the massaging means." App. Br. 29. During oral argument Appellant's representative stated that this element does not fall within

9

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

35 U.S.C. § 112, 6th paragraph because "[t]here is sufficient structure where they…should not be interpreted" as means plus function." Tr. 16. Appellant further argues that "[o]ne of ordinary skill in the art would have no motivation to change the soft support surface of the Daneshvar pad to provide the claimed massaging means without first understanding Appellant's claims and applying impermissible hindsight." App. Br. 30.

Appellant mischaracterizes the Examiner's rejection. The Examiner suggests no change in the structure disclosed in Daneshvar, but specifically finds that "[t]he massaging means takes the form of bubbles being covered by a soft layer of plastic, sponge layer, and/or by a soft fabric such as lamb skin." Final Rejection 17. Accordingly, the Examiner finds that Daneshvar explicitly discloses structure that protrudes throughout and involves the ability to provide some massaging capability as claimed. Appellant does not provide any persuasive argument or evidence that the raised bubbles in Daneshvar would not provide some massaging capability sufficient to meet the claim language at issue. As such, we sustain the Examiner's rejection of claim 8.

*Claims 18 and 36*

Appellant argues claims 18 and 36 as a group. We choose claim 18 as representative of the group and claim 36 stands or falls with claim 18. 37 C.F.R. § 41.37(c)(1)(vii). Claim 18 recites, in pertinent part, "manipulation of relief means by a user for exercising the hand and the fingers of the hand." Appellant argues that Daneshvar does not disclose applying pressure to the wrist by the user's hands "as being exercise or as

10

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

being usable as exercise for the user's hand and fingers."  App. Br. 30.  We find this to be unpersuasive because the Examiner finds that "Daneshvar teaches manipulation of relief means (col. 6, lines 31-38) by a user for exercising the hand and fingers of the hand."  Final Rejection 21. Regardless of whether Daneshvar specifically refers to this as exercise or manipulation as claimed, the Examiner finds that this disclosure amounts to and "is readable upon manipulation of the relief means."  *Id.*  Accordingly, the Examiner has found that Daneshvar's teaching is the same as the manipulation required by the claims, with which we agree.  We, therefore, sustain the Examiner's rejection of claims 18 and 36 as unpatentable over Daneshvar, Gibbs, and Gibbon.

*Rejection of Claims 2, 4-13, 15, 16, and 18-37 as*
*Unpatentable over Daneshvar and Francis*

The Examiner found that Daneshvar teaches all of the claimed aspects in these claims, except those relating to the heating and cooling of the gel. Final Rejection 22-23.  The Examiner then found that Francis "discloses a microwavable thermal compress" and that "the thermal gel pack is 'capable of various uses, such as to warm the hands or to warm or cool an injured or painful part of the body.'"  Final Rejection 23.  The Examiner ultimately concluded that "[i]t would have been obvious to use the gel of Francis, Jr. in the wrist rest of Daneshvar, to form a microwave heatable therapeutic body pad."  Final Rejection 25.  Appellant argues the combination based upon the same arguments we previously rejected regarding the combination of Daneshvar and Gibbs both *supra* and in the prior appeal.  (App. Br. 32-35.)

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1

Having already rejected these arguments as unpersuasive we sustain the Examiner's rejections over the combination of Daneshvar and Francis.

Appellant further argues specific claim elements of claims 2, 15, 27, and 33 (App. Br. 33-34); claim 8 (*Id.* at 34); and claims 18 and 36 (*Id.* at 34-35) based upon the same or similar arguments as already addressed above with respect to the Daneshvar, Gibbs, and Gibbon combination. Having determined these arguments unpersuasive, we sustain the Examiner's rejections of claims 2, 4-13, 15, 16, and 18-37 as unpatentable over Daneshvar and Francis for similar reasons.

*Rejection of Claims 2, 4-13, 15, 16, and 18- 37 as unpatentable over Daneshvar and Gibbs*

Because we affirm the rejections of claims 2, 4, 13, 15, 16, and 18-37 over the combinations of Daneshvar, Gibbs, and Gibbons or Francis, which address all of the claims, we do not reach the Examiner's rejection of the claims over the combination of Daneshvar and Gibbs.

DECISION

For the above reasons, we AFFIRM the Examiner's decision to reject claims 2, 4-13, and 15-37.

Requests for extensions of time in this *ex parte* reexamination proceeding are governed by 37 C.F.R. § 1.550(c). *See* 37 C.F.R. § 41.50(f).

<u>AFFIRMED</u>

Appeal 2013-010747
Reexamination Control 90/012,124
Patent US 5,566,913 C1


PATENT OWNER:

PERKINS COIE LLP-SEA GENERAL
PATENT-SEA
P.O. BOX 1247
SEATTLE, WA  98111-1247


THIRD PARTY REQUESTER:

O'MELVENY & MYERS LLP
IP & T CALENDAR DEPARTMENT LA-13-A7
400 SOUTH HOPE STREET
LOS ANGELES, CA  90071-2899

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2014, I electronically filed Appellant Prokop Labs, LLC's Corrected Principal Appeal Brief using the Court's CM/ECF filing system, which constitutes service on registered counsel of record for all parties, pursuant to Fed. R. App. P. 25(c), Fed. Cir. R. 25(a), and the Court's Administrative Order Regarding Electronic Case Filing 6(A) (May 17, 2012).

DATED:  July 29, 2014                    By: */s/ Kevin A. Zeck*
                                              Kevin A. Zeck
                                              KZeck@perkinscoie.com

                                              *Attorney for Appellant*
                                              *Prokop Labs, LLC*